**BLUE VALLEY MACHINE & MANUFACTURING COMPANY,
Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

**No. 20100.**

United States Court of Appeals,
Eighth Circuit.

Jan. 14, 1971.

Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Leonard M. Wagman, Morton Namrow, Attys., N.L.R.B., for respondent.

Patrick E. Hartigan, Margolin & Kirwan, Kansas City, Mo., for petitioner.

Before VAN OOSTERHOUT and BRIGHT, Circuit Judges, and NEVILLE, District Judge.

VAN OOSTERHOUT, Circuit Judge.

Blue Valley Machine & Manufacturing Company has filed a petition to review the decision and order of the National Labor Relations Board finding it guilty of unfair labor practices hereinafter described. The Board has cross-petitioned for enforcement of its order. Jurisdiction is established. The Board's order is reported at 180 NLRB No. 55.

The Board, in agreement with the Examiner, found that the Company violated § 8(a) (5) and (1) of the National Labor Relations Act as amended, 29 U.S.C.A. § 151 et seq., by withdrawing recognition and failing to bargain in good faith with the Union,[1] which was the representative of a majority of the Company's employees, and by granting a unilateral wage increase of fifteen cents an hour. The Board also found that the Company violated § 8(a) (1) of the Act by failing to make a valid offer of reinstatement to unfair labor practice striker Robert Hambel.

■ A careful examination of the record as a whole satisfies us that there is substantial evidence to support the Board's determination that the Company violated § 8(a) (5) and (1) of the Act by withdrawing recognition and by failing to bargain in good faith with the Union, and by granting a unilateral wage increase. In reaching such determination we, like Board member Sagoria, place no reliance on the statement in footnote 21 of the Trial Examiner's report to the effect that the Company's withdrawal of its agreement on certain matters tentatively agreed upon in earlier negotiations constitutes evidence of bad faith. The Board's order with respect to the violations just described will be enforced as well as the Board's order that the Company bargain in good faith with the Union.

■ We find no substantial evidentiary support for the Board's determination that the Company failed to make a valid offer of reinstatement to Hambel. We do not question the Board's determination that Hambel was engaged in an unfair labor practice strike or that Hambel made an unconditional request for reinstatement. On the reinstatement issue, the Trial Examiner's finding, which was upheld by the Board, reads:

"This officer [offer], made by the company officials, obviously with great reluctance and accompanied by comments and admonitions that tended to create an aura of restraint and coercion, carried an implied threat to the employee that, if he returned, his tenure might be very short-lived. The Trial Examiner concludes and finds that by this conduct the Respondent failed to make a valid offer of reinstatement to Hambel, and that in so doing it further violated Section 8(a) (1). Cf. Cello-Tape [Tak] Company, 143 NLRB 295, 303–304."

*Cello-Tak Company,* cited by the Examiner, lends no support to his finding. The facts in *Cello-Tak Company* differ materially from those in our present case.

The only evidence offered on the reinstatement issue is that of Union organizer Stone and Company secretary Johnston. Stone accompanied Hambel to the Company offices on May 5, 1969, at which time a demand for reinstatement of Hambel was made. There is no substantial conflict in the testimony. Stone testified that he told the Company officers that the strike was over and that Hambel was making an unconditional re-

---

1. District Lodge, 71, International Association of Machinists & Aerospace Workers, AFL–CIO.

quest for reinstatement. On the relevant issue, Stone's testimony reads:

"Mr. Johnson spoke up and said Bob could go back to work. Mr. Hambel's first name is Bob. He asked if he wanted to come back right away or after lunch, and it was approximately 11 o'clock at that time. Mr. Hambel said he preferred to come back after lunch. Mr. Johnston said, 'If you come back to work we are going to be watching you.' Mr. Johnston was gesturing with his finger toward Mr. Hambel. He said, 'If you come back to work we are going to watch you and watch you close. There is not going to be any roaming around the shop and talking to Haley and the other guys, staying on the job, we are going to watch you and watch you close.'

"After an intermission Mr. Johnston repeated this again. Mr. Johnson said to me, 'I hope there is no hard feelings,' he said, 'there is none on my part.' And I said, 'There is no hard feelings on my part,' but I pointed out to Mr. Johnson that District 71, the union, had unfair labor practice charges in process with the National Labor Relations Board. Mr. Johnson said, 'Yes, I know, but I don't think that will amount to anything.' Mr. Johnson says, 'Bob, I hope there is no hard feelings, I hope you hold no hard feelings, I don't hold no hard feelings against you.' and Mr. Hambel nodded his head; * * *."

Stone further testified that Hambel at a later date told him he did not go back to work because "he just couldn't make himself go back to work there with the attitude Mr. Johnston had."

Johnston's testimony includes:

"Q. Can you explain what, if anything, was said to the people as they were gathered there, as far as how they should work in the shop? A. Yes, our superintendent was present in the office and he made his statement to our entire group of employees. This included several of the new hires and this type of statement went something like this, that previous to this time we have had a lot of trouble about people staying on the job, walking around the shop, bothering other people, talking to other people in excessive amounts, and we have been told by one of the new hires that they had been told they would have trouble if the old employees came back into the plant, so we wanted it understood, and our superintendent stated that they were all just alike in our employment excepting their seniority, and we did not wish these practices that had been going on over the last several months to continue."

We find no evidentiary basis for the Board's finding of an implied threat to Hambel that his tenure would be short-lived if he returned to work. We further find no unreasonable conditions were imposed in the reinstatement negotiations. There is no indication that Union membership or activity would be subject to scrutiny or discriminatory action. The testimony goes no further than to show that the Company expected all employees, including Hambel, to observe reasonable work rules prescribed by the Company.

The Board's order will be enforced as to § 8(a) (5) and (1) violations consisting of withdrawing recognition, refusal to bargain in good faith, and the granting of the unilateral wage increase. The bargaining order will also be enforced. The Board's order for reinstatement and back pay for Hambel is set aside and enforcement of such order is denied.